**In re James Douglas FRALEY, Debtor.**

**James Douglas Fraley, Plaintiff,**

v.

**U.S. Dept. of Ed., et al., Defendants.**

**No. 98–3072.**

United States Bankruptcy Court,
N.D. Ohio.

Jan. 31, 2000.

William L. Swope, Findlay, OH, Ralph J. Lewis, Toledo, OH, for defendants.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Dischargeability of a Student Loan Debt guaranteed by the Defendants. At the Trial, the Parties were afforded the opportunity to present evidence, and any arguments that they wished the Court to consider in reaching its decision. This Court has now had the opportunity to review all of the arguments of counsel, the evidence presented at Trial, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's repayment of the student loan debt would not impose an undue hardship, and therefore the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

### FACTS

James D. Fraley, the Plaintiff and Debtor in this action (hereinafter referred to as the Debtor), seeks through the instant adversary proceeding to discharge a student loan debt owed to the United States Department of Education, et al. (hereinafter referred to as the Creditors). The obligation to which the Debtor refers was incurred in the early 1990's when the Debtor, on at least four different occasions, borrowed money to help pay for the educational expenses associated with attaining a degree in basic electronics, a degree which the Debtor eventually received sometime in 1993. The aggregate amount of the obligations originally incurred by the Debtor was approximately Eight Thousand Five Hundred Dollars ($8,500.00). However, except for the attachment by the IRS of an income tax refund in the amount of Two Hundred Twenty Dollars ($220.00), the Debtor, since incurring the student loan obligations, has not made any attempt to repay the debt. Therefore, as a result of accruing interest and other miscellaneous costs, the total outstanding indebtedness owing to the Creditors at the time the Debtor filed his Chapter 7 bankruptcy petition stood at Eleven Thousand Eight Hundred Ten Dollars and $^{29}/_{100}$ ($11,810.29).

On August 26, 1999, a Trial was held on the Debtor's Complaint at which time the following factual information was presented to the Court: The Debtor is currently a thirty (30) year old single man, in reasonably good health, with no dependents. Upon initially receiving his degree in basic electronics, the Debtor took a job making Six dollars and Fifty cents ($6.50) per hour. However, since then the Debtor has, through various job moves, been able to steadily increase his income, and presently the Debtor makes Ten dollars and Fifty-seven cents ($10.57) per hour as a service technician with the Danka Corporation. In addition, the Debtor testified that although he receives very little overtime pay at the Danka Corporation, he usually works at least forty (40) hours per week. Thus, after factoring in allowable deductions, the Debtor's present net monthly income can, at a minimum, be regarded to be One Thousand Two Hundred Fifty Dollars ($1,250.00). In addition, as a part of his compensation package with the Danka Corporation, it was brought to the Court's attention that the Debtor receives medical and dental insurance, and is provided, at a cost of only One Hundred Dollars ($100.00) per month, with a company vehicle for personal use.

On the other side of the equation, the Debtor testified that the following itemized list constituted his reasonable monthly expenses:

| | | |
|-------|---|--------|
| Rent | $ | 500.00 |
| Electric | $ | 90.00 |
| Gas | $ | 42.00 |
| Telephone | $ | 75.00 |
| Cable | $ | 35.00 |
| Garbage | $ | 25.00 |
| Food | $ | 150.00 |
| Clothing | $ | 10.00 |
| Laundry | $ | 15.00 |
| Medical | $ | 20.00 |
| Transportation | $ | 100.00 |
| Entertainment | $ | 40.00 |
| Personal | $ | 40.00 |
| Total | | $1,142.00 |

Furthermore, upon cross-examination, the Debtor also revealed that he currently has a Twenty-five ($25.00) dollar per month expense as a result of incurring approximately Eight Hundred dollars ($800.00) in credit card debt since being granted his bankruptcy discharge.

In addition to the foregoing information being brought to this Court's attention, the Court also found relevant the following factual information elicited from the Debtor: First, the position the Debtor currently holds with the Danka corporation is related to the Debtor's degree in electronics. Second, the Debtor has been employed with the Danka Corporation for approximately four (4) years. Third, the Debtor will likely receive annual pay increases while employed at the Danka Corporation. Finally, the Debtor plans to continue working at the Danka Corporation for the foreseeable future.

### LAW

The Bankruptcy Code, as amended by the Bankruptcy Reform Act of 1994, provides in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

### DISCUSSION

In the instant adversary proceeding, the sole issue before the Court is whether the Debtor is entitled to have his student loans discharged. Under 28 U.S.C. § 157(b)(2)(I) the determination of this issue is a core proceeding over which this Court, as a bankruptcy court, has jurisdiction to enter final orders and judgments. 28 U.S.C. §§ 157(a) and 1334.

In 1976 Congress, in an effort to rescue the student loan program from potential insolvency, placed strict limitations upon debtors who seek to discharge their student loan obligations through the bankruptcy process. *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 732–33 (Bankr.N.D.Ohio 1999). In 1998, these restrictions were further enhanced so that presently a debtor's sole avenue to have a student loan debt discharged is to establish that the repayment of the loan would constitute an "undue hardship." Higher Education Amendments of 1998, Pub.L. No. 105–244, 122 Stat. 1837 (codified as amended in 11 U.S.C. § 523(a)(8)). However, the phrase "undue hardship" is not actually defined by the Bankruptcy Code, and as a consequence various judicial tests have been developed, which are not always consistent with each another, to discern if "undue hardship" actually exists in a particular case. *PHEAA v. Faish (In re Faish)*, 72 F.3d 298, 302 (3rd Cir.1995).

Recently, in *Green v. Sallie Mae Servicing Corp. (In re Green)*, this Court,

in conformity with two decisions rendered by the Sixth Circuit Court of Appeals [1], found it appropriate to employ what has become to be known as the *Brunner* test to determine whether a debtor is entitled to an "undue hardship" discharge pursuant to § 523(a)(8). 238 B.R. 727, 733–34 (Bankr.N.D.Ohio 1999). Under the *Brunner* Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, a debtor must establish that the following three elements are in existence in order to have a student loan discharged on the basis of "undue hardship":

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for himself and his dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987); *see also Zlotopolski v. Dressel (In re Dressel)*, 212 B.R. 611, 616 (Bankr.E.D.Mo.1997) (it is the debtor who bears the burden to establish that each and everyone of the *Brunner* test elements is met). Upon applying these elements to the instant case however, this Court, based upon the following analysis, cannot find that the Debtor has met his burden with respect to any of the foregoing requirements.

First, regarding the first prong of the *Brunner* test, it is apparent from the evidence this Court has before it, that the Debtor, if forced to repay his student loan debts, can still maintain at least a minimal standard of living based upon his current income and expenses. In this regard, the Court observes that the Debtor is currently able to afford all the basic amenities of life while still having, according to the Debtor's own figures, at least Eight-three dollars ($83.00) per month in disposable income, funds which could undoubtedly go toward repayment of the student loan. In addition, an examination of the Debtor's expenses demonstrates that some expenses could likely be decreased in order to free up funds for other matters such as effectuating a quicker pay off of the student loan. For example, surely the Debtor, being a single man with no dependents, does not need to spend Five Hundred dollars ($500.00) per month for rent. Once more, allocating Seventy-five dollars ($75.00) per month for telephone service does not seem to be either necessary or prudent. Also, it seems unfair that the Creditors, and by implication the United States taxpayers, should have to pay for the Debtor's Thirty-five dollar ($35.00) per month cable bill.

Continuing with this Court's analysis of the *Brunner* test, it is difficult to imagine, in conformity with the second prong of the *Brunner* test, that the Debtor's current state of financial affairs will likely continue for a significant portion of the student loan repayment period. This presumption is based upon this Court's observation that the Debtor, who is presently young and healthy, will, according to his own testimony, likely receive future increases in pay. Furthermore, the Debtor has already received a discharge on all his other unsecured debts. Finally, with regards to the last prong of the *Brunner* test, this Court simply cannot conclude that the Debtor has made a good faith effort to repay his student loans. In fact, just the opposite seems to be true, considering that the Debtor has not made one voluntary payment on his student loan obligations, and no extenuating circumstances were presented exculpating the Debtor for his lack of payments. Accordingly, as the Debtor has failed to establish that any of the elements of the *Brunner* test have been met, this Court must find that the Debtor's

1. *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998).

student loans are nondischargeable under § 523(a)(8).

The Debtor, however, in anticipating the foregoing holding, asks that this Court invoke its equitable powers under § 105(a) so as to forgive him of the debt associated with the interest and other miscellaneous costs that have accrued on his student loans since they first became due. In other words, the Debtor asks that this Court set the balance of the debt owed to the Creditors at Eight Thousand Five Hundred dollars ($8,500.00).

 Under § 105(a)[2] of the Bankruptcy Code, it is clear that this Court, as a court of equity, has the power to fashion an appropriate remedy, including a partial discharge, of a student loan debt.[3] For example, in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, the Sixth Circuit Court of Appeals stated that:

> Although the bankruptcy court should not have discharged the [debtor's] entire student loans, we believe it had the power to take action short of total discharge. We find this authority in 11 U.S.C. § 105(a) which permits the bankruptcy court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,' so long as such action is consistent with the Bankruptcy Act. In a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act.

144 F.3d 433, 438–39 (6th Cir.1998) (internal citations omitted). Notwithstanding,

§ 105(a) should not be invoked by a bankruptcy court lightly. As the bankruptcy court in *In re Charles & Lillian Brown's Hotel, Inc.*, observed, "the court's utilization of its powers under Code § 105(a) is discretionary...., and must be carefully honed in light of the facts of the case, applicable precedent and appropriate policy." 93 B.R. 49, 54 (Bankr.S.D.N.Y.1988) (internal quotations and citations omitted). As a consequence, merely establishing that a debtor will receive a benefit by a partial discharge of a student loan obligation is insufficient, by itself, to warrant applying § 105(a) because all debtors would in some way benefit by having their student loan debts partially discharged. Instead, a bankruptcy court should only invoke its equitable powers under § 105(a) to partially discharge a student loan debt if it finds that the equities of the situation tip distinctly in favor of the debtor. In the present situation, however, given this tenant, this Court simply cannot find that the Debtor is entitled to a partial discharge of his student loan debt under § 105(a).

To begin with, it is clear that the Debtor, by receiving a degree in electronics, is receiving the benefits of his educational loan. Also, the Court finds it capricious that the Debtor can, in less than one year, incur approximately Eight Hundred ($800.00) dollars in post-discharge credit card debt, yet still feel that the equities of his case call for at least the partial forgiveness of his student loan debts. Finally, it is clear to the Court, based upon its earlier analysis concerning the Debtor's expenses, that the Debtor has the ability to

---

**2.** Section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

**3.** In *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, the Sixth Circuit Court of Appeals mentioned that in addition to granting a partial discharge, a bankruptcy court in the exercise of its equitable powers may also: (1) institute a repayment schedule (presumably modifying the repayment terms of the loan); (2) defer repayment; (3) acknowledge that the debtor may re-open the proceedings to revisit the question of a hardship discharge; or (4) fashion any appropriate remedy. 144 F.3d 433, 438–39 (6th Cir. 1998).

pay at least One Hundred Fifty ($150.00) dollars per month toward the repayment of the student loans, which if done would pay off the balance of the loans in approximately ten years (10) years.[4] In this regard, the Court notes that the normal repayment period for a student loan obligation is ten (10) years, with some student loans going as long as twenty (20) or twenty-five (25) years. *Bey v. Dollar Savings Bank (In re Bey)*, 95 B.R. 376, 378 (Bankr.W.D.Pa.1989). Thus, given these considerations, this Court can see no reason why the Debtor should be excused from the interest payments on a voluntarily incurred obligation, when numerous other former students, who are similarly situated, are encumbered with similar obligations.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

***ORDERED*** that the Plaintiff's student loan obligations to the Defendants are hereby determined to be nondischargeable debts pursuant to 11 U.S.C. § 523(a)(8).

---

**4.** This based upon a loan amount of Eleven Thousand Eight Hundred Ten Dollars and

$^{29}/_{100}$ ($11,810.29) amortized at an 8% interest rate.