In re Jamie L. MILLER, Debtor.

Jamie L. Miller, Plaintiff,

v.

U.S. Dept. of Education, Defendant.

No. 99–3198.

United States Bankruptcy Court, N.D. Ohio.

Sept. 1, 2000.

Ralph J. Lewis, Toledo, OH, for Defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

On September 29, 1999, the above-captioned Plaintiff filed an adversary complaint, in accordance with Bankruptcy Rule 7001, seeking to have a certain student loan obligation discharged on the basis that repayment of that student loan would constitute an undue hardship within the meaning of § 523(a)(8). That section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

In previous cases addressing the issue of undue hardship under § 523(a)(8), this Court, in conformance with the prior decisions rendered by the Sixth Circuit Court of Appeals,[1] has applied what has become to be known as the *Brunner* Test to determine whether a debtor meets the undue hardship standard of § 523(a)(8). This test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, requires that a debtor establish, by a preponderance of the evidence, the existence of the following three elements:

> (1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
> (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and
>
> (3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987); *Brown v. Educ. Credit Management (In re Brown)*, 247 B.R. 228, 233 (Bankr.N.D.Ohio 2000) (the debtor must prove the *Brunner* elements by a preponderance of the evidence).

On August 24, 2000, the Court held a Trial on the matter. From the evidence presented at this Trial, and from reviewing the entire record of this case, this Court finds that the following accurately represents the facts which transpired in this case:

The Debtor, who at the time of Trial was 35 years of age, attended the University of Toledo from 1983 to 1996. While at the University of Toledo, the Debtor studied Business Administration and Legal Assistance, but never obtained any degree. To help finance her education, the Debtor obtained student loans from the Fifth/Third Bank in the amount of Two Thousand Eighty-two and 19/100 dollars ($2082.19). In 1993, or sometime thereabouts, the Debtor's student loan obligation

---

**1.** These decisions are: *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994); and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998).

became due, however, the Debtor, after only making minor payments on the obligation, default thereon. Thereafter, the Defendant, the United States Department of Education, as the ultimate guarantor of the loan, honored the Debtor's obligation, and thus became the assignee of the Debtor's unpaid loan obligation. At the time of the Trial, the total outstanding balance on the Debtor's loan to the Defendant stood at Three Thousand Twenty-one and 00/100 dollars ($3021.00).

Since August 14, 2000, the Debtor has been employed as a clerk with the City of Toledo, Department of Development. In this position, the Debtor's annual salary is Twenty-one Thousand Six Hundred dollars ($21,600.00), and with respect to this salary, the Debtor testified that she will receive, in accordance with her Union Contract, incremental pay increases over the next three (3) years which will total at least 25% of her present salary. Prior to obtaining her position with the City of Toledo, the Debtor over the past eleven (11) years had been employed with various law firms as a legal secretary, earning as much as Twenty-four Thousand dollars ($24,000.00) per year. The Debtor, however, testified that she took her new position, with its initial cut in salary, on account of the better health and retirement benefits offered by the City of Toledo.

The Debtor is presently married and has two children, ages seven (7) and two and one-half (2½). All members of the Debtor's household, including the Debtor, are in good physical health. The Debtor's husband, who is presently thirty-seven (37) years of age, works in the food service business approximately Twenty-four (24) hours per week at a wage of nine dollars ($9.00) per hour. Thus, as it stands now, the yearly salary of the Debtor's husband is approximately Eleven Thousand Two Hundred Thirty-two dollars ($11,232.00). It appears, however, that the Debtor's husband is presently underemployed as the Debtor's joint income tax return for the 1999 tax year show that the Debtor's household income was Forty Thousand Four Hundred Ninety-seven dollars ($40,497.00).

An examination of the Debtor's assets reveals that she presently has an undivided interest in an IRA with an approximate worth of One Thousand Three Hundred Fifty and 00/100 dollars ($1,350.00). With regards to the Debtor's household expenses, it is undisputed that the Debtor's youngest child attends day care at a cost of One Hundred Thirty-two dollars ($132.00) per week, while the Debtor's oldest child attends a private school at an annual cost of One Thousand Six Hundred dollars ($1,600.00). The Debtor's other household expenses include:

| | |
|---|---|
| $493.00 | Mortgage (includes insurance and taxes) |
| $75.00 | Electric |
| $70.00 | Gas |
| $30.00 | Water/Sewer |
| $40.00 | Telephone |
| $35.00 | Cable |
| $10.00 | Home Maintenance |
| $500.00 | Food |
| $60.00 | Clothing |
| $15.00 | Laundry |
| $20.00 | Medical/Dental |
| $15.00 | Recreation |
| $10.00 | Charitable Contributions |
| $60.00 | Auto Insurance |
| $250.00 | Installment Payments made by Debtor's husband |
| $50.00 | Misc. |

With regards to these above-stated expenses, the Debtor maintains that she and her husband, at this time, do not earn enough money to cover such expenses. As a consequence, the Debtor related to the Court that certain family members, as they have also done in the past, help the Debtor and her husband out financially. According to the Debtor, without such help, the Debtor and her husband would not be able to maintain a minimal standard of living based upon their current income

and expenses. Furthermore, the Debtor related to the Court that she does not foresee her financial situation improving much in the future. As a result, the Debtor maintains that she is entitled to have her student loans discharged on the basis of undue hardship. The Court, however, after considering the foregoing facts, must disagree. In particular, the Court finds, for the following reasons, that the Debtor has failed to meet her burden, as a matter of law, under the second and third prongs of the *Brunner* Test. Accordingly, the Debtor is not entitled to receive an undue hardship discharge of her student loan obligations under § 523(a)(8). However, as will be explained, the Court will permit a portion of the Debtor's student loan obligation to be discharged in accordance with this Court's equitable powers under 11 U.S.C. § 105(a).

## LEGAL ANALYSIS

■■ In order for a debtor to have his or her student loan obligation discharged, the financial hardship that the debtor experiences must be undue; this is, the hardship must be more than the garden variety hardship experienced by most of the debtors who seek bankruptcy relief. *Luna v. Educ. Credit Management Corp. (In re Luna)*, 236 B.R. 291, 293–94 (Bankr. M.D.Fla.1999). To this end, the second prong of the *Brunner* Test requires that a debtor establish that there exist additional circumstances which indicate that their strained state of financial affairs is likely to persist for a significant portion of the repayment period. *See Muto v. Sallie Mae (In re Muto)*, 216 B.R. 325, 330 (Bankr.W.D.N.Y.1996) (the second prong of the *Brunner* Test is meant to ensure that the hardship the debtor is experiencing is really undue). In accordance with this requirement, however, the record of this case is completely devoid of any facts from which this Court could reasonably infer that the Debtor's distressed state of

financial affairs is likely to persist for a significant portion of the repayment period. In fact, many facts presented in this case clearly point to the Debtor's financial situation markedly improving in the future. For example, the Debtor by her own admission will receive pay increases over the next three years which will total, at a minimum, 25% of her current salary of Twenty-one Thousand Six Hundred dollars ($21,600.00). In addition, given that the Debtor is clearly an intelligent woman in good physical health, there is ample reason to believe that the Debtor will receive promotions and/or further pay increases at her place of employment. The Court also observes that the Debtor's household will likely receive an additional boost in income when the Debtor's husband, who is presently underemployed, finds new or additional work, an event which given his good physical health and the current condition of the economy will presumably occur in the very near or immediate future.

In coming to the foregoing conclusions, the Court, of course, realizes that it is being called upon to predict future events. As a result, some speculation is obviously involved. *See Goranson v. Pennsylvania Higher Educ. Assistance Agency (In re Goranson)*, 183 B.R. 52, 55–56 (Bankr. W.D.N.Y.1995) (problem with *Brunner* Test is that the Court must predict future events). However, in this case the above-stated conclusions made by the Court seem neither improbable nor far-fetched. Consequently, as the Debtor has not shown anything to the contrary, the Court cannot find that the Debtor has sustained her burden under the second prong of the *Brunner* Test. Accordingly, as each prong of the *Brunner* Test must be met,[2] the Debtor does not qualify for an undue hardship discharge of her student loan debt under 11 U.S.C. § 523(a)(8). In addition, even assuming for argumentative sake that the Debtor's financial circumstances would meet the second prong of

---

**2.** *Wegrzyniak v. United States (In re Wegrzyniak)*, 241 B.R. 689, 692 (Bankr.D.Idaho 1999)

(debtor must establish all elements of the *Brunner* Test).

the *Brunner* Test, it is also the position of this Court that the Debtor has clearly failed to meet her burden with respect to the third and final prong of the *Brunner* Test.

■■■ As stated above, the third prong of the *Brunner* Test requires that a debtor establish that he or she has made a good faith effort to repay their student loan obligation. Good faith is, of course, both an intangible and subjective standard, and thus to determine its existence, a court must necessarily examine the debtor's actions. In this regard, many different factors have been put forth by bankruptcy courts to determine if a debtor has made a good faith effort to repay his or her student loans. Foremost among these factors is whether a debtor has made a realistic effort to maximize their income and minimize their expenses. *Lebovits v. Chase Manhattan Bank (In re Lebovits)*, 223 B.R. 265, 274 (Bankr.E.D.N.Y.1998); *Rose v. United States Department of Educ. (In re Rose)*, 215 B.R. 755, 765 (Bankr. W.D.Mo.1997); *Wegrzyniak v. United States of America (In re Wegrzyniak)*, 241 B.R. 689, 692 (Bankr.D.Idaho.1999). Additional considerations may include: (1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control; (2) the amount of student loan debt that the debtor seeks to discharge; and (3) whether the debtor has realistically used all their available financial resources to pay the debt. *Lehman v. N.Y. Higher Educ. Serv. Corp. (In re Lehman)*, 226 B.R. 805, 808–09 (Bankr.D.Vt.1998). With respect to these considerations, a number of observations can be made:

First, the Debtor has failed to articulate a satisfactory reason as to why her seven (7) year old son needs to attend a private school, as opposed to a public school, at an annual expense of One Thousand Six Hundred dollars ($1,600.00). *See In re Weiss*, 251 B.R. 453 (Bankr.E.D.Pa.2000). In this respect, the Court observes that if the funds now utilized for her son's tuition were instead applied toward the repayment of her student loan obligation, the Debtor's obligation could easily be complete in less than two years, a very short period of time considering that the normal repayment period for a student loan is generally ten (10) years, and may even extend to twenty (20) or twenty-five (25) years. *Fraley v. U.S. Dep't of Educ. (In re Fraley)*, 247 B.R. 417, 423 (Bankr. N.D.Ohio 2000). Second, it is clear that the Debtor presently has the means to pay back a significant portion of her student loan obligation through liquidating her IRA. In making this statement, the Court is not trying to imply that a debtor must in every circumstance relinquish all of their retirement resources in order to meet the undue hardship standard of § 523(a)(8). In this case, however, the Court does not feel that the Debtor's utilization of the funds contained in her IRA will irreparably harm her chances to have a financially healthy retirement. In particular, the Court is confident that the Debtor, who is provided a good retirement program through her place of employment, will be able to acquire adequate retirement assets given that she is still relatively young and in good physical health. The Debtor's lack of compliance with the third prong of the *Brunner* Test is also exemplified by the low amount of the Debtor's student loan obligation. Stated succinctly, it does not seem generally within the spirit of the undue hardship standard of § 523(a)(8) when a young woman in good physical health, who has earned as much as Twenty-four Thousand dollars ($24,000.00) per year, seeks to discharge a student loan debt of a relatively low amount. Accordingly, for these reasons, the Court must hold that the Debtor's student loan obligation to the Defendant is, in accordance with 11 U.S.C. § 523(a)(8), a nondischargeable debt in bankruptcy.

■■■ The Court's analysis, however, does not end there as under appropriate circumstances a debtor, although not entitled to a hardship discharge under

§ 523(a)(8), may still be entitled to have the terms of their student loan changed by the court (i.e., a reduction in the loan amount) so that the debtor obtains some of the benefits of a bankruptcy discharge. As stated by the Sixth Circuit Court of Appeals in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby):*

> Although the bankruptcy court should not have discharged the ... entire student loans, we believe it had the power to take action short of total discharge. We find this authority in 11 U.S.C. § 105(a), which permits the bankruptcy court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,' so long as such action is consistent with the Bankruptcy Act. In a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act.

144 F.3d 433, 438–39 (6th Cir.1998) (internal citations omitted). However notwithstanding this holding, not every debtor who seeks bankruptcy relief is entitled to receive a partial discharge of their student loan obligations, or otherwise have a bankruptcy court change the terms of their student loan obligation. Instead, in *Fraley v. U.S. Dep't of Ed. (In re Fraley)*, this Court, in applying the Sixth Circuit's holding in *In re Hornsby*, held that it would only invoke its equitable powers under § 105(a), so as to partially discharge a student loan debt, if it found that the equities of the situation tip distinctly in favor of the debtor. 247 B.R. 417, 422 (Bankr.N.D.Ohio 2000). Simply put, this Court abides by the legal maxim that one who seeks equity must also do equity. Factors to consider in this respect may include, among others things: (1) whether the debtor has made any payments on the student loan obligations; (2) whether the debtor obtained any tangible benefit(s) from their student loan obligation; (3) whether the debtor is using their best efforts to maximize their financial potential; and (4) whether the debtor's troubled financial circumstances resulted from events not realistically within the debtor's control.

■ After considering these factors as it relates to the overall equities of this case, the Court comes to the conclusion that, although a close call, the Debtor is entitled to some relief from her student loan obligation. In particular, the Court notes that the Debtor has made some payments on her student loan obligation, and the Debtor, given her particular circumstances, has put forth a genuine effort to maximize her financial potential. However, given that the Court's decision is a close call and considering that the debt involved in this case is relatively small, the relief afforded to the Debtor will be limited. Specifically, the Court finds it appropriate that the Debtor be required to pay back the entire Three Thousand Twenty-one dollars ($3,021.00) that is presently due; but with all interest that would have otherwise accrued thereon discharged pursuant to this Court's powers under 11 U.S.C. § 105(a). This decision, however, is made on the condition that the Debtor pay back her student loan in compliance with the ensuing Orders of the Court. Stated to the point, if the Debtor in anyway fails to strictly comply with the terms of the Court's decision, all interest that would have otherwise accrued on the Debtor's student loan obligation will become a nondischargeable debt in bankruptcy.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the student loan obligation of the Plaintiff, Jamie L. Miller, to the Defendant, the United States Department of Education, be, and is hereby, determined to be a nondischargeable debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

It is *FURTHER ORDERED* that the Plaintiff's nondischargeable student loan obligation to the Defendant, be, and is hereby, determined to be Three Thousand Twenty-one dollars ($3,021.00).

It is *FURTHER ORDERED* that while the Plaintiff is in compliance with all of the terms of this Order, that in accordance with Court's equitable powers under 11 U.S.C. § 105(a), no interest shall accrue on the Plaintiff's nondischargeable obligation to the Defendant.

It is *FURTHER ORDERED* that the Plaintiff make voluntary payments to the Defendant of at least Six Hundred Four and 20/100 dollars ($604.20) per year. Such payments shall first become due on the first anniversary of the issuance of this Decision, and shall continue to become due on each anniversary thereafter until the obligation is paid in full. Nothing in this Order prevents the Plaintiff from paying her annual obligation earlier and/or in installments as long as the entire amount due is paid on or before the above-specified due date.

It is *FURTHER ORDERED* that the Defendant provide to the Plaintiff an address as to where payments on the Plaintiff's nondischargeable obligation may be tendered.