**In re Donald/Kitty WILCOX, Debtors.**

**Donald Wilcox, et al., Plaintiffs,**

v.

**Educational Credit Management, Defendant.**

**Nos. 00–3067, 99–33035.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 16, 2001.

---

Douglas M. Walter, Findlay, OH, for Debtors.

Matthew J. Thompson, Columbus, OH, for Great Lakes Higher Educ. Corp.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiffs' Complaint to determine the dischargeability of certain student loan debts owed to the Defendant, Educational Credit Management. The Plaintiffs bring their cause of action under 11 U.S.C. § 523(a)(8) which permits student loan obligations to be discharged in bankruptcy if the debtor can establish that repayment of the student loan would impose an "undue hardship" upon the debtor and the debtor's dependents. Specifically, 11 U.S.C. § 523(a)(8) provides that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The particular debts at issue in this case, which arose to finance the Plaintiff's (Kitty Wilcox) Associates Degree in Medical Assisting, were incurred in four increments: (1) Two Thousand Six Hundred Twenty-five dollars ($2,625.00) incurred on October 11, 1988; (2) Eight Hundred Seventy-five dollars ($875.00) incurred on October 17, 1989; (3) One Thousand Five Hundred Twenty-seven and 50/100 dollars ($1,527.50) incurred on February 2, 1990;

and (4) One Thousand Four Hundred Sixty dollars ($1,460.00) incurred on October 19, 1990. With regards to the Plaintiffs' personal liability for these debts, the Plaintiff, Kitty Wilcox, was the sole signatory on all of the loans except for the last one for which the Plaintiff, Donald Wilcox, is also liable. For purposes of the Plaintiffs' cause of action under § 523(a)(8), the Parties have stipulated to these facts: (1) the Plaintiff, Kitty Wilcox, incurred the above student loans from 1988 to 1990; (2) the Plaintiffs have since that time paid a total of Two Hundred Three and 66/100 dollars ($203.66) on the student loan obligations; (3) as the result of accruing interest and the recapitalization of that interest, a total of Thirteen Thousand Seventy-five and 21/100 dollars ($13,075.21) is now owed to the Defendant. In addition, the Court, from the Plaintiffs' bankruptcy petition, takes judicial notice of the fact that on July 23, 1999, the Plaintiffs filed for relief under Chapter 7 of the United States Bankruptcy Code, listing in their bankruptcy petition Eighty-two Thousand Two Hundred Twenty-eight and 80/100 dollars ($82,228.80) in unsecured nonpriority debt.

On October 25, 2000, the Court held a Trial on the Plaintiffs' claim of "undue hardship" under 11 U.S.C. § 523(a)(8). At this Trial, the Parties were afforded the opportunity to present evidence and make arguments in support of their respective positions. After considering the arguments presented by the Parties, including the evidence presented at the Trial, as well as the entire record in the case, the Court finds that the following account of events accurately depicts the facts which are relevant to the Plaintiffs' assertion of "undue hardship":

The Plaintiffs, Donald C. Wilcox, and Kitty J. Wilcox, who are husband and wife, have three children, one of whom is legally

dependent upon the Plaintiffs for support.[1] At the time of the Parties' Trial, Donald Wilcox was forty-six (46) years of age, while his wife Kitty Wilcox was forty-three (43) years of age. Presently, the Plaintiff, Kitty Wilcox, is unemployed; although in the past, Mrs. Wilcox has worked as a medical technician and also in the food service industry. Mrs. Wilcox explained that her present state of unemployment stems from the current difficulties that she has pertaining to both her physical and mental well-being. In particular, the evidence in this case shows that Mrs. Wilcox currently suffers from certain medical conditions, which include, but are not limited to, anxiety attacks, depression, memory loss, epilepsy, disabling back problems, and weight problems. In order to manage these medical conditions, Mrs. Wilcox is presently receiving various medical treatments; however, the evidence presented in this case shows that her physical condition, instead of improving, will likely become progressively worse.

As a result of her medical conditions, and her attendant inability to work, Mrs. Wilcox testified that she is entirely dependent upon her husband, Donald Wilcox, for financial support. Thus turning now to Donald Wilcox's state of financial affairs,[2] the evidence presented in this case shows that Mr. Wilcox is, at this time, employed with the Budd Company in Carey, Ohio. As a part of his employment with the Budd Company, Mr. Wilcox receives health insurance benefits. These health insurance benefits, which consist of a prescription drug plan, are able to pay for a significant portion of the costs associated with the health problems afflicting Mrs. Wilcox. In terms of salary, Mr. Wilcox, as an employee of the Budd Company, earns approximately Two Thousand Four Hundred dollars ($2,400.00) per month. This salary, however, is contingent upon Mr. Wilcox working a number of overtime hours; a situation, which according to Mr. Wilcox, may or may not be available in the months ahead. In the absence of overtime hours, Mr. Wilcox related to the Court that his current base salary is Twelve and $^{67}/_{100}$ dollars ($12.67) per hour, which after accounting for allowable deductions, such as taxes and union dues, amounts to approximately Four Hundred Six dollars ($406.00) per week or One Thousand Seven Hundred Fifty-nine dollars ($1,759.00) per month.

On the expense side of the equation, the evidence presented in this case shows that the Plaintiffs' reasonable monthly expenses are as follows:

| | |
|---|---|
| Rent | $ 410.00 |
| Electricity/Heating Fuel | $ 165.00 |
| Water/Sewer | $ 65.00 |
| Telephone | $ 60.00 |
| Cable TV | $ 35.80 |
| Home Maintenance | $ 25.00 |
| Food | $ 350.00 |
| Clothing | $ 40.00 |
| Medical/Dental Expenses | $ 250.00 |
| Transportation | $ 210.00 |
| Recreation | $ 65.00 |

1. In addition, one of the Plaintiffs' adult children, who also has a child, lives with the Plaintiffs. The evidence, however, shows that this child, to whom the Plaintiffs have no legal duty to support, will be soon moving out.

2. It should be noted for the record that Mr. Wilcox has also experienced some health problems. However, as far as the near future is concerned, such problems do not appear to be serious enough to affect the ability of Mr. Wilcox to work.

| | |
|---|---|
| Auto Insurance | $ 72.17 |
| Auto Payment | $ 246.40 |
| Visa Card | $ 30.00 |
| Rental Purchase | $ 20.00 |
| Attorney Fees | $ 100.00 |
| Total | $2,144.37 |

With respect to the Plaintiffs' above income and expenses, a couple of additional facts were brought to this Court's attention. First, it was pointed out that the Thirty dollar ($30.00) per month Visa Card expense was incurred by the Plaintiffs to purchase a Washer for the family household. Second, it was related to the Court that at the time of Trial, Mrs. Wilcox had applied for Social Security Disability Benefits, which, if permitted, would entitle the Wilcox family household to approximately Two Hundred dollars ($200.00) in additional income per month.

## LEGAL ANALYSIS

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

The Plaintiffs in this case seek to have the student loan debts enumerated herein discharged on the basis of "undue hardship" pursuant to 11 U.S.C. § 523(a)(8). With regards to the "undue hardship" standard set forth in this section, the Sixth Circuit Court of Appeals, in the cases of *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), has employed what has become to be known as the Brunner Test to determine if "undue hardship" exists. In accord therewith, this Court, as it has done in the past,[3] will employ the Brunner Test to determine the dischargeability of the Plaintiffs' student loan debts.

Under the Brunner Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, a debtor must establish that the following three elements are in existence in order to have a student loan discharged on the basis of "undue hardship":

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for himself and his dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). The evidentiary standard for these requirements is a preponderance of the evidence. *Brown v. Educ. Credit Management (In re Brown)*, 247 B.R. 228, 233 (Bankr.N.D.Ohio 2000) (the debtor must prove the Brunner elements by a preponderance of the evidence).

In applying the three prongs of the Brunner Test to the factual circumstances surrounding Mrs. Wilcox's case, the Court finds that she has met her bur-

---

**3.** *See Miller v. U.S. Dep't of Educ. (In re Miller)*, 254 B.R. 200 (Bankr.N.D.Ohio 2000); *Grine v. Texas Guaranteed Student Loan Corp (In re Grine)*, 254 B.R. 191 (Bankr.N.D.Ohio 2000); *Boyd v. U.S. Dep't of Educ. (In re Boyd)*, 254 B.R. 399 (Bankr.N.D.Ohio 2000); *Brown v. Educ. Credit Management (In re Brown)*, 247 B.R. 228 (Bankr.N.D.Ohio 2000); *Mitchell v. United States Dep't of Educ. (In re Mitchell)*, 210 B.R. 105, 108 (Bankr.N.D.Ohio 1996); *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 734 (Bankr.N.D.Ohio 1999); *Fraley v. U.S. Dep't. of Educ. (In re Fraley)*, 247 B.R. 417 (Bankr.N.D.Ohio 2000).

den of proof thereunder. In coming to this conclusion, the Court first observes that, in accordance with the first two prongs of the Brunner Test, there is really no question that Mrs. Wilcox, being unemployed, currently has no ability to pay her student loans; and that given the various medical conditions afflicting Mrs. Wilcox, her inability to pay the student loans will likely persist for a significant portion of the loan repayment period. In addition, despite the fact that Mrs. Wilcox has only paid Two Hundred Three and 66/100 ($203.66) dollars on her student loans, the Court finds that the good faith prong of the Brunner Test has been satisfied. This conclusion rests upon the rationale that in determining the existence of good faith under the third prong of the Brunner Test, a court, in addition to considering how much the debtor has actually paid, should take into account such factors as:

(1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;

(2) whether the debtor has realistically used all their available financial resources to pay the debt;

(3) whether the debtor has, in fact, attempted to repay the student loan debt;

(4) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;

(5) the percentage of the student loan debt in relation to the debtor's total indebtedness.

See Miller v. U.S. Dep't of Educ. (In re Miller), 254 B.R. 200, 205 (Bankr.N.D.Ohio 2000); Green v. Sallie Mae Servicing Co. (In re Green), 238 B.R. 727, 736 (Bankr. N.D.Ohio 1999).

In this case, when applying the above factors to the circumstances surrounding Mrs. Wilcox's case, her good faith effort to repay the student loans becomes apparent.

For example, in this case, Mrs. Wilcox did not immediately seek to discharge her student loan obligations. Also along this line, Mrs. Wilcox's student loans only account for approximately 15% of the total unsecured debts listed by the Plaintiffs in their bankruptcy petition. In this regard, the Court also notes that a very large percentage of the Plaintiffs' unsecured indebtedness is comprised of medical expenses, which in turn are related to the health problems the Plaintiffs have encountered. The Court also observes that the Plaintiffs live a rather frugal lifestyle, and thus in conformance with the above considerations, Mrs. Wilcox has made a realistic effort to maximize her financial resources. Accordingly, for these reasons, the Court holds that on the basis of "undue hardship," Mrs. Wilcox is entitled to have her legal liability on her student loan obligations discharged.

Notwithstanding, merely because Mrs. Wilcox is entitled to have her student loans discharged on the basis of "undue hardship" does not automatically entitle Mr. Wilcox to the same treatment. Rather, Mr. Wilcox, as a co-obligor on one of Mrs. Wilcox's student loans, must also establish that he meets the requirements of the Brunner Test. Hawkins v. Chase Manhattan Bank (In re Hawkins), 139 B.R. 651, 652–53 (Bankr.N.D.Ohio 1991) (the fact that the debtor is not the student borrower is not controlling); In re Pelkowski, 990 F.2d 737 (3rd Cir.1993) (student loan exception to discharge applies to co-obligors). In this regard, however, the Court, after carefully considering the matter, cannot find that Mr. Wilcox has met his burden with respect to the first prong of the Brunner Test, which as previously stated requires a debtor to establish that he cannot maintain a 'minimal' standard of living for himself and his dependents if he is forced to repay the student loan debt.

This decision rests primarily on the evidence presented in this case which shows that Mr. Wilcox had, at the time of Trial, over Two Hundred Fifty dollars ($250.00) in disposable income; the amount of which is clearly enough to pay, in a relatively short period of time, the One Thousand Four Hundred Sixty ($1,460.00) dollar debt for which Mr. Wilcox is jointly liable with Mrs. Wilcox. In coming to this conclusion, the Court realizes that in the future Mr. Wilcox's income may decrease if he is no longer able to obtain overtime hours. However, at this time, such a scenario is merely speculative, and thus given the relatively small amount of debt at issue, the Court is not persuaded that such a consideration overcomes Mr. Wilcox's present ability to pay the debt while at the same time still providing for himself and his family. Accordingly, the Court holds that the single student loan obligation of the Plaintiff, Donald Wilcox, to the Defendant is, in accordance with 11 U.S.C. § 523(a)(8), a nondischargeable debt in bankruptcy.

 The Court's analysis, however, does not end there, as a debtor encumbered with a student loan obligation, who has not complied with all of the requirements of the Brunner Test, is not necessarily altogether foreclosed from receiving some of the benefits of a bankruptcy discharge. Instead, in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), the Sixth Circuit Court of Appeals held that it is permissible for a bankruptcy court to partially discharge a debtor's student loan obligation by virtue of a bankruptcy court's equitable powers under 11 U.S.C.

§ 105(a).[4] According to the Court in *In re Hornsby*, to adopt an all-or-nothing approach to the dischargeability of student loan debts would thwart the purpose of section 523(a)(8). *Id.* at 439. Nevertheless, not all debtors are entitled to have their student loans reduced or otherwise adjusted. Rather, as this Court stated in a former case involving a debtor's entitlement to have his student loans discharged under § 105(a):

> the court's utilization of its powers under Code § 105(a) is discretionary, and must be carefully honed in light of the facts of the case, applicable precedent and appropriate policy. As a consequence, merely establishing that a debtor will receive a benefit by a partial discharge of a student loan obligation is insufficient, by itself, to warrant applying § 105(a) because all debtors would in some way benefit by having their student loan debts partially discharged. Instead, a bankruptcy court should only invoke its equitable powers under § 105(a) to partially discharge a student loan debt if it finds that the equities of the situation tip distinctly in favor of the debtor.

*Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417, 422 (Bankr.N.D.Ohio 2000) (internal quotations and citations omitted). In this regard, factors to consider may include, among others things: (1) whether the debtor has made any payments on the student loan obligations; (2) whether the debtor obtained any tangible benefit(s) from their student loan obligation; (3) whether the debtor is using their best efforts to maximize their financial poten-

4. Section 105(a) provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

tial; and (4) whether the debtor's troubled financial circumstances resulted from events not realistically within the debtor's control. *In re Miller*, 254 B.R. at 206.

After considering these factors in light of the applicable facts of this case, the Court finds the Plaintiff, Donald Wilcox, is entitled to have his obligation on the student loan debt owed to the Defendant partially discharged. In coming to this conclusion, the Court observes that Mr. Wilcox, in addition to working overtime hours for which he should be commended, maintains a family budget that is unquestionably reasonable. In addition, it is readily apparent that given Mrs. Wilcox's inability to work, Mr. Wilcox cannot be said to have gained any real tangible benefits from Mrs. Wilcox's student loan obligations. Along this same line, the Court in no way questions the fact that Mr. Wilcox is not at fault or somehow responsible for the financial troubles he is experiencing. As to the amount of debt that should be discharged, the Court finds that the Plaintiff, Donald Wilcox, should be required to repay, at a minimum, One Thousand dollars ($1,000.00) on his student loan obligation to the Defendant, and that this amount should be repaid at the rate of at least Fifty dollars ($50.00) per month. In addition, to provide further relief for Mr. Wilcox, the Court also holds that no interest shall accrue on this obligation, and that the first installment on the obligation will not become due until July 1, 2001 (although the Plaintiff, if he wishes, may commence making payments prior to this date).

In summary, the Court finds that although Mrs. Wilcox has carried her burden of establishing "undue hardship" for purposes of 11 U.S.C. § 523(a)(8), Mr. Wilcox, being a co-debtor on one of Mrs. Wilcox's student loans, has failed to establish his burden under the first prong of the Brunner Test. The Court, however, after considering the circumstances of this case, and in conformity with the Sixth Circuit Court of Appeals' decision in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 440 (6th Cir. 1998), holds that Mr. Wilcox is entitled to a partial discharge of his student loan obligation. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that on the basis of "undue hardship" the student loan obligations of the Plaintiff, Kitty Wilcox, to the Defendant, Educational Credit Management, be, and are hereby, determined to be DISCHARGEABLE debts in bankruptcy.

It is **FURTHER ORDERED** that the student loan obligation of the Plaintiff, Donald Wilcox, to the Defendant, Educational Credit Management, be, and is hereby, determined to be a NONDISCHARGEABLE debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

It is **FURTHER ORDERED** that the nondischargeable student loan obligation of the Plaintiff, Donald Wilcox, to the Defendant, be, and is hereby, determined to be One Thousand Dollars ($1,000.00) pursuant to 11 U.S.C. § 105(a).

It is **FURTHER ORDERED** that pursuant to 11 U.S.C. § 105(a) no interest shall accrue on the nondischargeable student loan obligation of the Plaintiff, Donald Wilcox.

It is **FURTHER ORDERED** that the Defendant provide to the Plaintiff an address as to where payments on the Plaintiff's nondischargeable obligation may be tendered.

It is **FURTHER ORDERED** that the minimum monthly payment obligation of

the Plaintiff, Donald Wilcox, to the Defendant, Educational Credit Management, is hereby determined to be Fifty Dollars ($50.00). This obligation will become due on the first day of every month, commencing July 1, 2001, and will last until the amount determined nondischargeable herein is paid in full.