**In re Kathy Jo GRINE, Debtor.**

**Kathy Jo Grine, Plaintiff,**

**v.**

**Texas Guaranteed Student Loan Corp., Defendants.**

**No. 99–3148.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 9, 2000.

John P. Korn, Toledo, OH, for Debtor/Plaintiff.

John J. Hunter, Jr., Toledo, OH, for Deft.

## *DECISION AND ORDER*

RICHARD L. SPEER, Chief Judge.

The above captioned adversary case comes before the Court after a Trial on the Debtor/Plaintiff's Complaint to determine the dischargeability of a student loan debt. The statutory basis upon which the Debtor relies for her cause of action is 11 U.S.C. § 523(a)(8) which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

At the Trial it was established that the amount in controversy was One Hundred Two Thousand Five Hundred Twenty-six and 46/100 dollars ($102,526.46).[1] In addi-

---

1. Of this amount, Seventy-two Thousand Seven Hundred Eighty-seven and 22/100 dollars ($72,787.22) is attributable to principal. In addition, Fourteen Thousand Ninety-one and

tion, from the evidence presented at the Trial, including the oral testimony given by the Debtor, the Court finds that the following accurately characterizes the relevant facts of this case.

The Debtor, who is in seemingly good health, is a single female just under 50 years of age. The Debtor is also the adoptive mother of a six-year old son. The Debtor's educational background shows that she has both an undergraduate degree and a law degree, and that to finance her education, the Debtor took various student loans between the years 1983 and 1989. Since receiving her student loans, it is clear that the Plaintiff, although at times receiving deferments, has made repeated attempts to make payments on her obligation to the Defendant. In fact, the evidence presented in this case shows that the Debtor has paid approximately Twenty-six Thousand dollars ($26,000.00) on her student loan debt since it was first incurred. Nevertheless, as the majority of the Debtor's payments went primarily to accruing interest, the actual principal of the Debtor's outstanding obligation to the Defendant was never significantly diminished.

The Plaintiff's work history shows that since graduating from law school in 1989, she has been employed as a staff attorney with the Lucas County Court of Common Pleas. In this position, the Plaintiff's present annual salary is Forty-six Thousand One Hundred Ninety-three and 42/100 dollars ($46,193.42), which, after factoring in allowable deductions, amounts to Two Thousand Seven Hundred Seventy-three dollars ($2,773.00) per month in take home pay. With regards to her present employment, the Plaintiff testified that she plans to stay at her current position for the foreseeable future, and that in this position she will likely receive moderate periodic pay increases.

On July 28, 1999, the Debtor petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. Not long thereafter, on August 5, 1999, the Debtor brought the instant adversary action against the Defendant to have her student loan obligation discharged on the basis that repayment of the loan would constitute an undue hardship under § 523(a)(8). (In her bankruptcy petition, approximately 80% of the Debtor's unsecured debt comprised her student loan obligation, while the remaining unsecured debt was comprised mainly of credit card debts). The factual basis upon which the Debtor relies for her assertion that she is entitled to receive a hardship discharge, concerns the circumstances surrounding her six-year old adoptive child. Specifically, it was brought to this Court's attention that the Debtor's young child has been diagnosed with many severe behavioral problems, including: autism; attention deficit hyperactive disorder; Asperger's Syndrome; and obsessive compulsive disorder. Once more, the evidence presented at the Trial shows that these problems are organic in nature, meaning that they are permanent. According to the Debtor, these problems, besides causing her a great deal of emotional consternation, have stretched her budget to the limit, and have made it simply impossible for her to pay her outstanding student loan obligations. In support thereof, the Debtor presented credible evidence which shows that she incurs approximately Four Hundred Seventy-five dollars ($475.00) in medical bills every month to treat her child's behavioral problems. In addition, the Debtor testified that she periodically incurs additional expenses to take care of her child. In particular, the Debtor stated that as her child cannot be integrated with other children, her day care expenses can be very high. Presently, the Debtor's day care expenses stand at Four Hundred Eighty dollars ($480.00) per month.

49/100 dollars ($14,091.49) is attributable to interest, and the remaining amount is attrib-

utable to collection charges.

In opposition to the discharge of the Debtor's student loan obligation, the Defendant introduced into evidence a monthly budget filled out by the Debtor which revealed that even after factoring in the Debtor's monthly medical bills and day care expenses, the Debtor's reasonable monthly expenses were still One Hundred Eighty-seven dollars ($187.00) lower than her monthly income of Two Thousand Seven Hundred Seventy-three dollars ($2,773.00). Once more, upon cross-examination, the Defendant was able to show that the Debtor has not done everything in her power to minimize her expenses and maximize her income. Specifically, it was shown that the Debtor has not fully explored possible outside financial assistance that may be available for her son's special needs. In addition, it was shown that the Debtor has not attempted to maximize her income by searching for alternative employment opportunities. With respect to this contention, the Debtor countered by asserting that as her present employer offers a flexible schedule on account of the special needs of her son, finding another employer offering a similar type of benefit at a higher rate of pay would be nearly impossible. The Defendant, however, did not introduce any evidence to support this assertion.

## LEGAL ANALYSIS

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

■ For policy reasons, the United States Congress decided in 1976 to exclude student loans from the scope of a bankruptcy discharge. However, in light of the fresh start policy of bankruptcy, Congress did provide an exception to the nondischargeability of a student loan debt if the debtor could establish that the repayment of the student loan would impose an "un-

due hardship" upon either the debtor or the debtor's dependents. The term "undue hardship," however, is not actually defined by the Bankruptcy Code. *United Student Aid Funds v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir. BAP 1999). Nevertheless, the existence of the adjective "undue" in front of the word "hardship" clearly indicates that Congress intended that the hardship experienced by the debtor must be very severe. *See Markley v. Educational Credit Management Corp. (In re Markley )*, 236 B.R. 242, 246 (Bankr.N.D.Ohio 1999) (garden variety hardship does not constitute an undue hardship for purposes of 11 U.S.C. § 523(a)(8)).

■ Recently, this Court, in conformity with two decisions rendered by the Sixth Circuit Court of Appeals,[2] has applied what has become to be known as the Brunner Test to determine whether a student loan is dischargeable on the basis of undue hardship. *Brown v. Educ. Credit Management (In re Brown)*, 247 B.R. 228, 233 (Bankr.N.D.Ohio 2000); *Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417, 421 (Bankr.N.D.Ohio 2000); *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 734 (Bankr.N.D.Ohio 1999). Under the Brunner Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, it must be established that the following three requirements have been met in order to have a student loan discharged:

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for himself and his dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

**2.** These cases are: *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994); and *Tennessee Stu-*

*dent Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998).

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). The Court will now address each of these requirements in order. However, before beginning, the Court observes that it is the Debtor who bears the burden to prove, by a preponderance of the evidence, that each one of the Brunner requirements have been satisfied. Thus, if a court finds that even one of the above stated requirements is not met, the court's inquiry must end without a finding of dischargeability. *Smalley v. Devry Institute of Technology, Inc.*, 200 B.R. 318, 320 (Bankr.N.D.Ohio 1996).

Under the first prong of the Brunner Test, a court is to examine the debtor's current financial situation to see if the repayment of the student loan obligation would cause the debtor not to be able to maintain a minimal standard of living. In this regard, a court must determine what amount, under the particular situation of each case, is at a minimum necessary to ensure that the debtor's basic needs are met. *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996). In making this determination, however, a debtor need not show that he or she is living in abject poverty, although a mere showing of tight finances would be insufficient. *In re Nascimento*, 241 B.R. at 445.

Upon applying this test to the instant case, the Court first observes, as the Defendant has pointed out, that even after the Debtor has met her basic living expenses, there does exist some excess income which could go toward the repayment of her student loan obligation. Specifically, the Debtor currently has just under Two Hundred dollars ($200.00) per month in surplus income which could be used to repay her student loan debt. Nevertheless, applying this amount toward the repayment of the Debtor's student loan debt will not satisfy the first prong of the Brunner test. This is because even after discounting accruing interest, it would still take the Debtor more than Forty (40)

years to pay off her debt at the rate of Two Hundred dollars ($200.00) per month. Obviously such a scenario is not realistic. This is especially true when one considers that the normal repayment period for a student loan is ten years, and when one also considers that the Debtor is now almost Fifty (50) years of age, and thus at this rate the Debtor would be almost Ninety (90) years of age when her student loan obligation was completely satisfied. *See Wardlow v. Great Lakes Higher Educ. Corp. (In re Wardlow)*, 167 B.R. 148, 152 n. 5 (Bankr.W.D.Mo.1993) ("the typical repayment period for student loans is ten years."). Of course, a Court is permitted to make downward adjustments in any of the figures proposed in the debtor's budget to free up additional funds to enable a debtor to pay his or her student loan obligation if such expenses are found to be either unnecessary or extravagant. *See In re Nascimento*, 241 B.R. at 445–46 (a court may require financial belt tightening). For example, this Court, on past occasions, has made downward adjustments in a debtor's entertainment expenses in order to find funds by which the debtor could pay his student loan obligation. *See, e.g., Woyame v. Career Educ. & Mgt. (In re Woyame)*, 161 B.R. 198, 202 (Bankr. N.D.Ohio 1993). However, upon reviewing the Debtor's budget, the Court feels that the Debtor's expenses are reasonable, a fact which even the Defendant did not seem to really contest at Trial. Accordingly, for these reasons, the Court finds that the Debtor, if forced to repay her student loan, would not be able to maintain a minimal standard of living for herself and her child, and thus the Debtor has satisfied her burden with respect to the first prong of the Brunner test. In addition, for these same reasons, and after considering that the behavioral problems incurred by the Debtor's young child are unlikely to significantly improve, the Court also finds that the Debtor has satisfied the second prong of the Brunner Test which asks: are there additional circumstances

existing which indicate that the debtor's distressed state of financial affairs is likely to persist for a significant portion of the repayment period? The Court thus now turns its attention to the last prong of the Brunner test.

The third and final prong of the Brunner test requires a showing that a debtor has made a good faith effort to repay his or her student loans. Good faith is, of course, both an intangible and subjective standard, and thus to determine its existence, a court must necessarily examine the debtor's actions. In this regard, many different factors have been put forth by the courts to determine if a debtor has made a good faith effort to repay his or her student loans. Foremost among these factors is the debtor's attempt to maximize income and minimize expenses. *Lebovits v. Chase Manhattan Bank (In re Lebovits)*, 223 B.R. 265, 274 (Bankr.E.D.N.Y. 1998); *Rose v. United States Department of Educ. (In re. Rose)*, 215 B.R. 755, 765 (Bankr.W.D.Mo.1997); *Wegrzyniak v. United States of America (In re Wegrzyniak)*, 241 B.R. 689, 692 (Bankr.D.Idaho.1999). According to the bankruptcy court in *Coats v. New Jersey Higher Educ. Assistance Auth. (In re Coats)*, this requirement ensures that the circumstance contributing to the debtor's distressed financial affairs are truly from factors beyond the debtor's reasonable control. 214 B.R. 397, 405 (Bankr.N.D.Okla.1997).

In this case, although a close call, the Court simply cannot find that the Debtor has carried her burden of demonstrating that she made a good faith effort to maximize her income and minimize her expenses. In particular, the complete absence on the part of the Debtor to even search for a higher paying position shows

to this Court that the Debtor has not made, for purposes of the third prong of the Brunner Test, a good faith effort to maximize her income. In addition, given the Debtor's degree of sophistication, her failure to explore all avenues of available financial help for her child shows that she has also not made a good faith effort to minimize her expenses. In making this decision, the Court is not trying to imply that such opportunities do, in fact, exist. Rather, the Court is simply holding that for a debtor to meet his or her burden under the third prong of the Brunner Test, evidence must exist which demonstrates that a debtor, in their effort to maximize income and minimize expenses, has realistically exhausted all possible avenues of opportunity. Accordingly, as the Debtor has failed to sustain her burden under the third prong of the Brunner Test, the court must find that the Debtor is not entitled to have her student loans discharged on the basis of undue hardship under § 523(a)(8).

Notwithstanding, a debtor encumbered with a student loan obligation, who has not complied with all of the requirements of the Brunner Test, is not necessarily altogether foreclosed from receiving some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances. Instead, in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), the Sixth Circuit Court of Appeals held that it is permissible for a bankruptcy court to partially discharge a debtor's student loan obligation by virtue of a bankruptcy's court's equitable powers under 11 U.S.C. § 105(a).[3] According to the Court in *In re Hornsby*, to adopt an all-or-nothing approach to the dischargeability of student loan debts would thwart

---

**3.** In *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, the Sixth Circuit Court of Appeals held that in formulating an equitable remedy under § 105(a) a bankruptcy court may: (1) partially discharge student loans, either by discharging an arbitrary amount of the principal, interest accrued, or attorney fees; (2) institute a repayment sched-

ule (presumably modifying the repayment terms of the loan); (3) defer repayment; (4) acknowledge that the debtor may re-open the proceedings to revisit the question of a hardship discharge; or (5) fashion any appropriate remedy. 144 F.3d 433, 440 (6th Cir. 1998).

the purpose of section 523(a)(8). *Id.* at 439. Nevertheless, not all debtors are entitled to have their student loans reduced. Rather as this Court recently stated in a case involving a debtor's entitlement to have his student loans discharged under § 105(a):

> the court's utilization of its powers under Code § 105(a) is discretionary, and must be carefully honed in light of the facts of the case, applicable precedent and appropriate policy. As a consequence, merely establishing that a debtor will receive a benefit by a partial discharge of a student loan obligation is insufficient, by itself, to warrant applying § 105(a) because all debtors would in some way benefit by having their student loan debts partially discharged. Instead, a bankruptcy court should only invoke its equitable powers under § 105(a) to partially discharge a student loan debt if it finds that the equities of the situation tip distinctly in favor of the debtor.

*Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417, 422 (Bankr.N.D.Ohio 2000) (internal quotations and citations omitted).

■■■ In this case, after giving due consideration to all the facts and relevant circumstances, the Court finds that it is appropriate to invoke its equitable powers under § 105(a) so as to partially discharge the Debtor's student loan debt. In particular, the Court feels that the equities of this case tip distinctly in favor of the Debtor after considering both the special needs of the Debtor's child, and the fact that the Debtor has made at least some effort to repay her student loan debts. As to the amount of debt that should be discharged, the Court finds that the Debtor should be required to repay, at a minimum, Eighteen Thousand dollars ($18,000.00) on her student loan obligation, and that this amount should be repaid at the rate of at least One Hundred dollars ($100.00) per month. In making this determination, the Court took into consideration the relatively small amount of disposable income the Debtor

will have available for the foreseeable future given the likely permanency of her son's behavioral condition, versus the fact that the Debtor has received a tangible benefit from her educational loans.

In summary, the Court finds that the Debtor has failed to carry her burden of establishing her entitlement to have her student loans discharged on the basis of an undue hardship under § 523(a)(8). However, after considering the circumstances of this case, and in conformity with the Sixth Circuit Court of Appeals' decision in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 440 (6th Cir.1998), the Court holds that Debtor is entitled to a partial discharge of her student loan obligations. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the student loan obligation of the Plaintiff, Kathy Jo Grine, to the Defendant, Texas Guaranteed Student Loan Corp., be, and is hereby, determined to be a nondischargeable debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

It is **FURTHER ORDERED** that the Plaintiff's nondischargeable student loan obligation to the Defendant be, and is hereby, determined to be Eighteen Thousand Dollars ($18,000.00) pursuant to 11 U.S.C. § 105(a).

It is **FURTHER ORDERED** that the Defendant provide to the Plaintiff an address as to where payments on the Plaintiff's nondischargeable obligation may be tendered.

It is **FURTHER ORDERED** that the Plaintiff's minimum monthly payment obligation to the Defendant is hereby determined to be One Hundred Dollars ($100.00). This obligation will become due on the first day of every month, commencing upon the Defendant's compliance with the above order, and will last until the

amount determined nondischargeable herein is paid in full.