In re John/Suzanne CHIME, Debtors.

John/Suzanne Chime, Plaintiffs,

v.

Suntech Student Loan,
et al., Defendants.

Nos. 02–3158, 01–36491.

United States Bankruptcy Court,
N.D. Ohio.

June 16, 2003.

---

17. The time records show 99.5 hours. Using Ungerman's hourly rate of $250, total fees billed are $24,875.00.

Herbert E. Adams, Fremont, OH, for plaintiffs.

Matthew J. Thompson, Columbus, OH, for defendants.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

The instant cause comes before the Court after a Trial on the Debtors' Complaint to determine the dischargeability of certain student loan debts in accordance with the "undue hardship" standard set

forth in 11 U.S.C. § 523(a)(8). At the Trial, it was revealed that since filing for bankruptcy relief, the Debtors have divorced, making the circumstances surrounding each of the individual Debtor's entitlement to an "undue hardship" independent of the other. Accordingly, this Court, in the discussion to follow, will independently analyze each of the Debtor's qualifications for an "undue hardship" discharge under § 523(a)(8). In conducting this analysis, which will begin with an examination of the applicable law, the Court will use those debt figures provided to the Court by the Parties. Respectively, these amounts are: Twenty-seven Thousand One Hundred and 58/100 dollars ($27,100.58) for the Debtor, John Chime; and Twenty-one Thousand Four Hundred Eighty-two and 52/100 dollars ($21,482.52) for the Debtor, Suzanne Chime. (Joint Ex. 1 & 2).

## APPLICABLE LAW

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

For reasons of public policy, Congress chose to exclude from the scope of a bankruptcy discharge those debts incurred by a debtor to finance a higher education. In enacting this exception to discharge, however, Congress recognized that some student-loan debtors were still deserving of the fresh-start policy provided for by the Bankruptcy Code. As a result, Congress, in enacting 523(a)(8), provided that a debtor could still be discharged from their educational loans if it were established that excepting the obligations from discharge would impose an "undue hardship" upon the debtor and the debtor's dependents. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 196 (Bankr.N.D.Ohio 2000). The specific language of § 523(a)(8) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The term "undue hardship," however, as it is used in 11 U.S.C. § 523(a)(8) is not actually defined. As a result, various tests have been developed by the courts to determine whether "undue hardship" actually exists under any given set of factual circumstances. In this regard, this Court, in accord with those prior decisions rendered by the Sixth Circuit Court of Appeals, has employed what has become to be known as the Brunner Test to determine whether a debtor is entitled to an "undue hardship" discharge of his or her student loan obligations.

Under the Brunner Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir.1987), a debtor must establish that the following three elements are in existence in order to have a student loan discharged on the basis of "undue hardship" under 523(a)(8):

(1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely

to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

With respect to this Test, it is the debtor's burden to establish, by a preponderance of the evidence, that each of its elements have been met. *In re Grine*, 254 B.R. at 197.

■ In addition, as it concerns educational debts, even if a debtor does not qualify for an "undue hardship" discharge, the debtor may still qualify for an equitable adjustment of the obligation. As was explained by the Sixth Circuit Court of Appeals, "[i]n a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)* 144 F.3d 433, 439–40 (6th Cir.1998). The type of relief afforded to a student-loan debtor usually involves providing the debtor with a partial discharge of his or her student loan debts, although a bankruptcy court may provide other types of relief. The authority for this equitable remedy is found in § 105(a) of the Bankruptcy Code which permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," so long as such an action is consistent with the Bankruptcy Code.

■ Nevertheless, not all debtors are entitled to have their student loans reduced or otherwise equitably adjusted. Rather, in prior cases, this Court has held that a bankruptcy court's utilization of its powers under § 105(a) is discretionary, and must be carefully honed in light of the facts of the case, applicable precedent and appropriate policy. *Wilcox v. Educ. Credit Management*, 265 B.R. 864, 871 (Bankr.

N.D.Ohio 2001); *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 199 (Bankr.N.D.Ohio 2000). As a consequence, merely establishing that a debtor will receive a benefit by a partial discharge of a student loan obligation is insufficient, by itself, to warrant applying § 105(a) because all debtors would in some way benefit by having their student loan debts partially discharged. Instead, it is clear that a bankruptcy court should only invoke its equitable powers under § 105(a) so as to partially discharge a student loan debt if it finds that the equities of the situation tip distinctly in favor of the debtor. *Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417, 422 (Bankr. N.D.Ohio 2000).

## FINDINGS OF FACT

As it relates to the grounds for discharge set forth above, the Court, in accordance with Bankruptcy Rule 7052, makes the following findings of fact with respect to each of the Debtors.

The Debtors, John Chime and Suzanne Chime, were divorced in April of 2002. As a part of their divorce, Mr. Chime received sole ownership of an apartment building. Together, the Debtors have a 2 ½ year-old son. The Debtors have joint custody of their son and share all expenses, including day care. As result, neither of the Debtors pay child support to the other. The Debtors' child suffers from some health problems such as asthma and potentially attention deficit disorder. Health insurance for the child is maintained by Mr. Chime, through a policy provided through his former employment as a police officer.

### John Chime

John Chime is 39 years of age. In 1999, Mr. Chime obtained a bachelor's degree in science and business administration. This degree was financed by the student loans

at issue in this case. Since incurring this student-loan debt, Mr. Chime has never made one payment on his obligation.

In the early 1990's, Mr. Chime was employed as a police officer making Twenty-five Thousand dollars ($25,000.00) to Twenty-seven Thousand dollars ($27,000.00) per year. Mr. Chime, however, left this line of work after he was injured during the course of his duty as a police officer. In 1995, Mr. Chime entered a new line of employment, obtaining a job earning approximately Forty Thousand dollars ($40,000.00). In this job, Mr. Chime ran a large department as a Senior Service Manager. In the year 2000, however, Mr. Chime was laid-off from this job as the result of downsizing. Since this time, Mr. Chime's has been looking for other work. In the year 2002, Mr. Chime's earned income was Five Thousand Six Hundred dollars ($5,600.00). Mr. Chime also receives a disability pension of approximately Four Hundred dollars ($400.00) per month as the result of the injury he suffered while a police officer.

Mr. Chime is presently remarried. His new wife holds a bachelor's degree in biology and presently earns around Twenty-four Thousand dollars ($24,000.00) per year. Mr. Chime and his new wife presently live in the apartment building received by Mr. Chime in the divorce. The cost for this housing is partially subsidized by the other tenants who also occupy the apartment building. As it relates to this apartment building, it was pointed out to the Court that Mr. Chime's new wife, through refinancing, was able to purchase the property.

### Suzanne Chime

Suzanne Chime is 40 years of age. In 1997 Ms. Chime, who already held a degree in education, graduated with an MBA degree after attending school for approximately three years. Although employed while attending school, Ms. Chime's MBA degree was financed, in part, by incurring debt. After incurring her loan obligations, Ms. Chime has made some intermittent payments on the debt, the last being in July of 2001.

Since receiving her MBA degree, Ms. Chime has utilized the degree at various jobs, earning approximately Forty Thousand dollars ($40,000.00) per year. At the time of Trial, however, Ms. Chime was receiving unemployment compensation of Three Hundred Seventeen dollars ($317.00) per week, having been recently laid off her last job. In addition, Ms. Chime was paying for her own health insurance through the COBRA program.

Presently, Ms. Chime is the residential parent of the Debtors' minor child.

### DISCUSSION

■ In this case, there is no question that both of the Debtors, having no full-time work at the present time, are unable to service their student-loan obligations. Thus, as is typical in many actions brought under § 523(a)(8), the Debtors have satisfied their burden under the first prong of the Brunner Test which looks to the financial circumstances as they exist in the present. The real essence, however, of the "undue hardship" standard of § 523(a)(8) is set forth in the second prong of the Brunner Test which looks to whether the debtor's financial difficulties will persist for a significant period of time. This requirement ensures that the hardship the debtor is experiencing is actually "undue," as opposed to the garden-variety financial hardship experienced by all debtors who seek bankruptcy relief. *Miller v. U.S. Dep't of Educ. (In re Miller)*, 254 B.R. 200, 204 (Bankr.N.D.Ohio 2000).

■ In support of their compliance with the second prong of the Brunner Test, the

Debtors brought to the Court's attention certain health problems which purportedly inhibit their ability to pay the student-loan obligations—for Mr. Chime, a past diagnosis with cancer and the injuries he sustained while a police officer; for Ms. Chime, depression. The Court, however, while not doubting the actual existence of these conditions, simply has no evidence before it to gauge the severity and therefore impact by which these conditions will have on either of the Debtors' future ability to earn a living. In this regard, this Court has held that when a debtor's health, whether mental or physical, is put at issue, some corroborating evidence must be introduced to substantiate the debtor's position; bare allegations simply will not suffice. *Swinney v. Academic Fin. Serv. (In re Swinney)*, 266 B.R. 800, 805 (Bankr. N.D.Ohio 2001). For example, if properly authenticated, letters from a treating physician could be utilized. *Id.*

In this case, however, the evidence presented, besides being completely devoid of any corroborating evidence regarding the debilitating nature of the Debtors' respective medical conditions, actually tends to show that both of the Debtors are perfectly capable of holding professional jobs, notwithstanding their medical conditions. By way of example, Mr. Chime, after being injured as a police officer, was able to hold down a full-time job as a Senior Service Manager for approximately five years. Similarly, Ms. Chime's past bouts with depression have not been severe enough to prevent her from holding various jobs in which she is able to utilize her MBA degree. In addition, Mr. Chime acknowledged that as it stands at the present time, his diagnosis with cancer has been successfully treated.

 Nevertheless, the existence of a debilitating medical condition, although prevalent in a very high percentage of successful "undue hardship" actions, is not a prerequisite to establishing the existence of "undue hardship" under § 523(a)(8). *McGinnis v. PHEA (In re McGinnis)*, 289 B.R. 254, 256 (Bankr.M.D.Ga.2002). Rather, as long as a debtor can demonstrate that some condition will, in all likelihood, inhibit his or her long-term ability to pay the student-loan debt, the second prong of the Brunner Test has been satisfied. Nonmedical factors to consider in this regard are whether, (1) the debtor failed to derive any economic value from his educational debts, (2) the debtor's overall lack of education and/or training, (3) the number and health of the debtor's dependents, (4) a lack of marketable skills, and (5) the debtor's age. *Turretto v. U.S. (In re Turretto)*, 255 B.R. 884, 889 (Bankr.N.D.Cal.2000).

 As the above considerations apply to this case, the facts presented show that both of the Debtors are relatively young, well educated and have been able to utilize their education (and hence their student loan obligations) to their advantage. In this same regard, both of the Debtors are actively pursing work which, if the past is a good indicator, could in the future enable both of the Debtors to earn over Forty Thousand dollars ($40,000.00) per year. From an individual standpoint, it is also noted that Mr. Chime has additional resources available through both his new wife whom is working, and the apartment building owned by his wife. Similarly, Ms. Chime, if she is not able to obtain work in a field related to her MBA degree, could through her degree in education obtain work as a teacher. Thus, of the above considerations, the only one which even remotely favors the Debtors' position concerns the health difficulties faced by the Debtors' son. Even so, while certainly causing an emotional strain on both of the Debtors, the financial burden caused by the child's health problems is surely mini-

mized on account of Mr. Chime's health insurance.

Based therefore upon the above indicia, it is the opinion of this Court that, although they are certainly experiencing financial difficulties at the present time, the Debtors will be able to, with sufficient perseverance, improve their financial situation in the not too distant future. As such, it would be premature to make a finding at this time that the Debtors have sustained their burden under the second prong of the Brunner Test. As a result, neither of the Debtors are, at this juncture, entitled to an "undue hardship" discharge of their student loan obligations. Additionally, for these same reasons, the Court is not persuaded that either of the Debtors are entitled to any equitable relief pursuant to this Court's powers under § 105(a).

 In coming to these conclusions, it is fully realized that the Court is making a prediction about the course of future events, a task which is naturally speculative. Congress, however, recognized this potential pitfall in an "undue hardship" analysis under § 523(a)(8) by enacting § 523(b) which, in relevant part, provides:

> Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, ... in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

Thus under this section, no preclusive effect is given in a subsequent bankruptcy to any nondischargeability determination made on a student-loan obligation in a prior bankruptcy case. *See, e.g., Lewis v. Illinois Student Asst. Comm. (In re Lewis)*, 276 B.R. 912, 920 fn. 5 (Bankr.C.D.Ill. 2002) ("where a debtor files a new bank-

ruptcy petition, the dischargeability of his student loan will be considered de novo, notwithstanding the prior determination of nondischargeability."). Consequently, if either or both of the Debtors are, after giving the matter a concerted effort, unable to improve their financial situation, they are not precluded from again bringing an action to have their student loans found dischargeable in accordance with the "undue hardship" standard of § 523(a)(8). However, given their future financial potential, it is this Court's firm belief that neither of the Debtors will need to seek such relief.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the student loan obligation(s) of the Debtor/Plaintiff, John Chime, to the Defendant, Educational Credit Management Corporation, be, and is hereby, determined to be a NONDIS-CHARGEABLE DEBT.

It is **FURTHER ORDERED** that the student loan obligation(s) of the Debtor/Plaintiff, Suzanne Chime, to the Defendant, Educational Credit Management Corporation, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.