**In re Anyse STOREY, Debtor.**

**Anyse Storey, Plaintiff,**

v.

**National Enterprise System, et al., Defendants.**

**No. 02–3245.**

United States Bankruptcy Court, N.D. Ohio.

July 29, 2004.

Theodore A. Konstantinopoulos, Javitch, Block & Rathbone, Patrick J. Krebs, Marc A. Melamed, Charles E. Natkins, Cleveland, OH, Robert G. Young, Gregory White, United States Attorney, Toledo, OH, for defendants.

Vijay K. Puligandla, Toledo, OH, for plaintiff.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Debtor's Complaint to De-

termine Dischargeability. At issue at the Trial was whether the Debtor was entitled to receive a discharge of those obligations she incurred to finance her higher education. At the Trial, three Defendants appeared: Case Western Reserve University; Educational Credit Management Corporation; and the United States Department of Health and Human Services. After considering the evidence presented at the Trial, as well as the arguments made by the Parties, the Court, for the reasons set forth herein, declines to grant the relief requested by the Debtor.

The Debtor's Complaint to Determine Dischargeability is brought pursuant to two separate Sections: 11 U.S.C. § 523(a)(8); and 42 U.S.C. § 292f(g). Respectively, these sections provide in pertinent part:

-A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(8) for an education benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

-A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted-

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable[.]

The latter provision applies solely to "HEAL" loans, "HEAL" standing for Health Education Assistant Loans.

In bringing her action under these two provisions, the Parties stipulated as to the outstanding balances of the respective obligations:

-Case Western Reserve University

$11,411.99, of which $8,199.34 is principal

-Educational Credit Management Corporation

$33,026.91, of which $23,818.79 is principal

-United States Department of Health and Human Services

$22,259.48, of which $20,378.00 is principal

The Parties also stipulated that, as with respect to the first two obligations, the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8) governed the issue of dischargeability, while the latter obligation with the government was subject to the "unconscionability" standard of 42 U.S.C. § 292f(g). As applied here, the undisputed facts of this case show as follows:

The Debtor, who is presently 50 years of age, is a licensed physician. The Debtor has practiced medicine for the past 15 years, and presently specializes in the field of urology. At some time in the not too distant future, the Debtor will become "board certified" in this specialty. At the present time, the Debtor practices solo, employing three part-time staff.

The Debtor has a son who just reached the age of majority. Before reaching the age of majority, the Debtor was required to pay child support to the father. Based upon past deficiencies, the Debtor, although no longer required to pay child support for current mainte-

nance, is slightly in arrears on her support obligation.

The Debtor was in the past divorced, but is presently married. Her present husband, who after retiring now works part-time for the Debtor, lives in a residence owned by the Debtor. Despite this arrangement, however, her husband does not help out significantly with their household expenses,—e.g., mortgage payment—instead opting to maintain another residence which he personally owns and in which his family lives rent free.

## LEGAL DISCUSSION

For a variety of policy reasons, student-loan obligations are excepted from the scope of a bankruptcy discharge. Although not a complete list, these policy reasons include, (1) prevention of abuse, (2) preclude harm to future students and taxpayers by preserving the solvency of the student-loan program, and (3) consideration for the fact that the loan is extended without regard to assets, secured solely on the basis that the student-debtor, by receiving the loan for an education, will improve their financial situation and thus be able to service the debt following graduation. *Andrews University v. Merchant, (In re Merchant),* 958 F.2d 738, 740 (6th Cir.1992); *Murphy v. Penn. Higher Educ. Assistance Agency & Educ. Credit Management Corp.,* 282 F.3d 868, 873 fn. 14 (5th Cir.2002). Based upon these policy considerations, there exists a presumption that student-loan obligations are not subject to the discharge injunction set forth in 11 U.S.C. § 524. Thus, whether an action is brought under § 523(a)(8) or § 292f(g), it is the debtor's burden to establish, by at least a preponderance of the evidence,

their entitlement to a discharge. *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356, 362 (6th Cir.1994); *United States v. Wood,* 925 F.2d 1580, 1583 (7th Cir.1991). This analysis will begin with the "undue hardship" standard of § 523(a)(8).

In determining whether a debtor has met the "undue hardship" standard of § 523(a)(8), the Sixth Circuit Court of Appeals has applied,[1] although not actually limited itself to the following three considerations set forth in the seminal cases on the matter, *Brunner v. New York State Higher Educ. Serv. Corp.*:

(1) The debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependants if forced to repay the loans;

(2) Additional circumstances exist indicating that the state of affairs is likely to persist for a significant portion of the repayment period; and

(3) The debtor has made a good faith effort to repay the loans.

831 F.2d 395 (2nd Cir.1987). Of these considerations, the second prong represents the substance of the "undue hardship" standard of § 523(a)(8). As has been pointed out on more than one occasion, "[t]he clear purpose of [the second prong] is to ensure that the hardship the debtor is experiencing is actually 'undue,' as opposed to the garden variety financial hardship experienced by all debtors who file for bankruptcy relief." *Miller v. U.S. Dep't of Educ. (In re Miller),* 254 B.R. 200, 204 (Bankr.N.D.Ohio 2000); *Mitcham v. United States Dep't of Educ. (In re Mitcham),* 293 B.R. 138, 144 (Bankr.N.D.Ohio 2003).

**1.** *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356 (6th Cir.1994); *Tennessee Student Assistance Corp.* *v. Hornsby (In re Hornsby),* 144 F.3d 433 (6th Cir.1998).

■ The center of gravity of the second prong of the *Brunner* test is permanency or, what can be termed, an involuntary inability to improve one's financial circumstances. Stemming from this principle, this Court has consistently espoused the maxim, now cited to favorably by the District Court,[2] that, (1) a debtor's distressed state of financial affairs must be the result of events which are clearly out of their control, and (2) the debtor must have done everything within their power to improve their financial situation. *Berry v. Educ. Credit Mgmt. Corp. (In re Berry)*, 266 B.R. 359, 365 (Bankr.N.D.Ohio 2000). Although not a *sine quo non*, an often used explanation, and a common paradigm for an "undue hardship" case, is the existence of a permanent disability, whether physical and/or mental. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 445 (Bankr.N.D.Ohio 2003).

As it regards the particulars of this case, the Debtor fully admitted that she does not have a disability which impairs her financial circumstances, admitting even that she could work long hours if needed. Instead, in support of her compliance with the second prong of the *Brunner* test, the Debtor contends that when set against her income, her needed expenses completely vitiate her ability to pay her student-loan debts. In making this assertion, the Debtor pointed to a confluence of circumstances: (1) financial problems relating to her divorce, including child support arrears; (2) problems with her medical practice, including rising malpractice insurance; and (3) monthly financial obligations, including but not limited to her student-loan obligations, a monthly mortgage obligation of $1,400.00, payments on back taxes and a business loan.

With these expenses, the Court, based on the conditions as they exist in this case, will not question their propriety; the second prong of the *Brunner* necessarily makes allowance for those necessary expenses needed by the debtor to participate in the fresh-start policy of the Bankruptcy Code. Instead, what is unfavorable to her case is that many of the negative influences on the Debtor's financial situation will be tempered; specifically noticeable, in a relatively short period of time, the Debtor's payment on her child support arrearage will be finished. Also, while the evidence presented on the subject was incomplete, the Debtor's tax and business loan obligations will presumably have a termination date in the not too distant future. Finally, at a slightly different angle, the favorable weight which can be afforded to the Debtor's concern as to the rising cost of malpractice insurance is, at best, marginal; it is of general knowledge that most doctors are facing rising costs for malpractice insurance, thus making this factor simply a necessary facet, and presumably included in the cost, of her line of work.

Putting things together then, these considerations raise serious questions if those items causing a financial drain on the Debtor's financial situation can truly be deemed to be permanent as applied to the second prong of the *Brunner* test. Yet, even if there does exist a large degree of permanency as applied to those expenses cited to by the Debtor as causing stress to her financial condition, such expenses only present half the picture.

■ By definition, any "undue hardship" analysis under § 523(a)(8) must take into account a debtor's income, no matter the source. When examined in the context of the second prong of the *Brunner* test, this necessarily requires looking not only to the debtor's present income, but also

**2.** *Jackson v. Educ. Credit Mgmt. Corp.*, 2004    WL 952882 (N.D.Ohio) (J. Carr)

looking to what the debtor's income stream will be in the foreseeable future. Although such an analysis necessarily involves a degree of speculation, a guiding principle, and one which adds certainty to the equation, is that a debtor is expected to use their best efforts to maximize their income within their vocational profiles. *Mitcham v. United States Dep't of Educ. (In re Mitcham)*, 293 B.R. 138, 144 (Bankr.N.D.Ohio 2003); *Goranson v. Pennsylvania Higher Educ. Assistance Agency (In re Goranson)*, 183 B.R. 52, 55–56 (Bankr.W.D.N.Y.1995).

As applied here, the facts show that the Debtor's present annual income is in the $50,000.00 range. In the past, however, the Debtor earned as high as $96,000.00 per year, and recently declined a job offer at an annual salary of $110,000.00. Given such a noticeable divergency in these figures, a viable explanation must be offered as to the Debtor's less than optimal income. As an explanation, the Court, based upon the Debtor's testimony, could discern two possible rationales, one explicit, one implicit.

■ First, as an explicit explanation, the Debtor related to the Court that she declined the job offer at $110,000.00 per year based upon her responsibility as a parent, pointing out that, to her son's detriment, this job required her relocating some distance away. Still, regardless as to the merits of this position, it must be set against the fact that the Debtor's son is now emancipated; yet the Debtor according to her own testimony, has not seriously pursued other employment opportunities. On this subject, all courts are in agreement that, unless there are further mitigating considerations, a debtor may not, by declining to look for better employment, become voluntarily underemployed. *See, e.g., Farrish v. U.S. Dep't of Educ. (In re Farrish)*, 272 B.R. 456, 462 (Bankr.

S.D.Miss.2001). Stemming, however, from this state of affairs, together with the overall tenor of her testimony, an implicit explanation for the Debtor's lack of any meaningful employment search could also be inferred: The Debtor is simply happier at her present, lower-paying position.

■ Although an education often enables a person to live a happier and more fulfilling life, the student-loan program is not a guarantor of a debtor's happiness. Rather, the decision to stay in a lower-paying job based upon one's happiness, whatever its benefits may be, is simply a choice. In this regard, it is easy to see that the whole concept of choice—which necessarily entails alternative options—is opposed to the "undue hardship" requirement that, (1) a debtor's distressed state of financial affairs must be the result of events which are clearly out of their control, and (2) the debtor must have done everything within their power to improve their financial situation. As stated in *Melton v. N.Y. State Higher Educ. Serv. Corp. (In re Melton)*:

> whether a debtor chooses privation for good reasons or for bad, § 523(a)(8) does not permit his choice to be exalted at the expense of an educational loan lender or guarantor. A debtor may not create undue hardship by a free decision to be less than optimally employed, however noble the motive.

187 B.R. 98, 102 (Bankr.W.D.N.Y.1995). In making this statement, the court in *In re Melton* also foreshadowed this case by going on to explain:

> If a student loan obligor with a medical degree decided to devote all of her time to volunteering at a soup kitchen rather than practicing medicine, the lender should not have to subsidize that choice. Because she would not be legally obligated to continue her volunteer work, and could become a practicing physician

at any time, she would be unable to satisfy prong two of the Brunner test by using her present economic circumstances as her only evidence of her future earnings.

*Id.*

Given, therefore, that a viable explanation has not been offered by the Debtor as to why she has not, despite in the past earning $96,000.00 annually and recently being offered a job at a yearly salary of $110,000.00, seriously pursued a higher paying job, the Court is inexorably led to but one conclusion: the Debtor is capable of earning at least double her present salary, thereby giving her the available means by which to service her student-loan obligation. In this respect, it has not been overlooked that, in her field of specialty, the Debtor will become "board certified" which, besides demonstrating favorably on both her intelligence and capabilities as a doctor, will only enhance her ability to obtain a well-paying job in the medical profession. Additionally, the Court takes note that the Debtor's household finances could significantly improve if her husband, instead of contributing to a household in which he does not reside, increased his contributive share to the Debtor's household.

In sum then, as the Debtor has options available that would enable her to pay her student-loan obligations, her present inability to pay the debt cannot be considered permanent as applied to the second prong of the *Brunner* test. As such, the Debtor is not entitled to an "undue hardship" discharge of her student-loan debts. Furthermore, as it is well-established that the "unconscionability" standard of § 292f(g) is a significantly more stringent standard than the "undue hardship" requirement of § 523(a)(8), it follows that the Debtor is also not entitled to a discharge of the "HEAL" loan held by the government. *Rice v. United States (In re Rice),* 78 F.3d 1144, 1149 (6th Cir. 1996) (defining unconscionable as excessive, exorbitant, lying outside the limits of what is reasonable or acceptable, shockingly unfair, harsh, or unjust, or outrageous). Consequently, the applicability of the "unconscionability" standard of § 292f(g) will not be discussed in detail, with the above analysis pertaining equally to this exception to discharge.

The Court's analysis, however, does not end here as the Sixth Circuit Court of Appeals has held that in a situation such as this, where a debtor is not otherwise entitled to receive an "undue hardship" discharge under § 523(a)(8), a bankruptcy court should still consider whether a debtor may be entitled to some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances. (e.g., a partial discharge of the student loan obligation). *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433, 440 (6th Cir.1998); *see also Grine v. Texas Guaranteed Student Loan Corp. (In re Grine),* 254 B.R. 191, 198 (Bankr.N.D.Ohio 2000). In the words of the Sixth Circuit Court of Appeals, "[i]n a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." *Id.* at 439. The type of relief that may be afforded to a student-loan debtor usually involves providing the debtor with a partial discharge of his or her student-loan debts. *Id.* at 440. However, in determining whether such relief is proper, the Sixth Circuit Court of Appeals has recently narrowed its position by holding that, instead of a bankruptcy court relying solely on its equitable powers under § 105(a) to partially discharge a student-

loan debt, "the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy—regardless of whether a court is discharging a debtor's student loans in full or only partially." *Miller v. Pennsylvania Higher Educ. Asst. Agency (In re Miller)*, 2004 WL 1671994 (6th Cir.(Term.)), 2004 Fed.App. 0246P. (recommended for full-text publication).

■ Here, based upon the Debtor's failure to meet her burden under the second prong of the Brunner Test, the Court has already found that requiring the Debtor to pay her student loans in full would not, within the meaning of § 523(a)(8), create an "undue hardship." Consequently, it logically follows that the Debtor would not be entitled to a partial discharge of her student-loan obligations. However, even if this were not the case, the Court has concerns regarding the Debtor's failure to pursue payment options under what is known as the Income Contingent Repayment Program which basis student-loan repayments on a debtor's income. For reference sake, the key components of this program are as follows:

The federal income contingent repayment program is a device which allows student-loan debtors, who have little or no income, a means by which to pay their student loan obligations. Payments are calculated, subject to yearly review, based upon a borrower's Adjusted Gross Income, family size and the "poverty guidelines" promulgated by the United States Department of Health and Human Services. The repayment period covers a maximum of 300 months, after which time the debt is deemed forgiven.

*Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 244 (Bankr.N.D.Ohio 2003). Set forth succinctly then, the Income Contingent Repayment Program only requires a debtor to pay what they can and when they are able.

■ Consequently, while participation in the repayment program is not an absolute prerequisite, its equitable manner of handling student-loan debts means that a debtor who fails to pursue payment options under the program bears a heavy burden to show that they have noted in good faith as applied to the third prong of the Brunner Test. In this case, this burden has not even closely been met considering that the Debtor, as previously discussed, has the ability to earn a significantly higher salary, but for personal reasons has chosen not to increase her income. Moreover, the total outstanding debt owed by the Debtor on her student loans—$66,698.38—is not out of line with her potential income—$110,000.00 or more. In coming to this decision, it should be pointed out that if the Debtor's situation would change for the worse, she is protected by § 523(b) which provides that a decision as to the nondischargeability of a student-loan obligation is not *res judicata*.

In reaching the conclusions found herein, the Court has considered all the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the obligations incurred by the Debtor, Anyse Storey, to finance her higher education are not subject to the discharge injunction of 11 U.S.C. § 524.

It is **FURTHER ORDERED** that the Debtor's Complaint be, and is hereby, DISMISSED.