In re Holly MATTHEWS Debtor.

Holly Matthews, Plaintiff,

v.

Sallie Mae Servicing, Defendant.

Nos. 03–3470, 03–35162.

United States Bankruptcy Court,
N.D. Ohio.

Dec. 14, 2004.

Daniel N Sharkey, Detroit, MI.

Holly Matthews, Toledo, OH.

John L Jacobson, Toledo, OH.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaints to Determine Dischargeability in two separate, but related adversary proceedings which, for purposes of judicial economy, were tried together. At issue at the Trial was whether the Debtor was entitled to receive a discharge of those obligations she incurred to finance her higher education pursuant to the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). After considering the evidence presented at the Trial, as well as the arguments made by the Parties, the Court, for the reasons set forth herein, declines to grant the relief requested by the Debtor.

### FACTS

The Debtor, Holly Matthews, is a single woman with no children, 35 years of age. On July 1, 2003, the Debtor filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Included in her petition were loans incurred by the Debtor during the 1990's to finance her undergraduate and graduate degrees. For purposes of the Trial held on the matter, the total outstanding balance of educational-loan obligations owed by Debtor was $54,775.50: $52,077.40 to the Defendant, Educational Credit Management Corporation;[1] and $2,698.10 to the Defendant, the United States Department of Education. The Debtor has made no payments on either of these obligations.

1. Substituted as to the Defendant, Sallie Mae Servicing Corporation.

Currently, the Debtor is employed in the field of geriatrics from which she receives a monthly income, after account for mandatory deductions, of approximately $1,000.00 per month. According to the Debtor, this is insufficient to meet her necessary living expenses which exceed her monthly income by approximately $250.00. Also according to the Debtor, this state-of-affair is unlikely to improve because of her affliction with the following health issues: (1) Guillan–Barre Syndrome; (2) Osteoarthritis; and (3) other miscellaneous ailments.

## LAW

**11 U.S.C. 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

## DISCUSSION

 As brought in her complaints, before this Court is the issue of whether, in contrast to the general presumption, the Debtor is entitled to receive a discharge of her student-loan obligations. Pursuant to 28 U.S.C. § 157(b)(2)(I), a proceeding brought to determine the dischargeability of a particular debt is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 1334.

For reasons of public policy, Congress chose to exclude from the scope of a bankruptcy discharge, those debts incurred by a debtor to finance a higher education. In enacting this exception to discharge, however, Congress recognized that some student-loan debtors were still deserving of the fresh-start policy provided by the Bankruptcy Code. As a result, Congress provided that a debtor could be discharged from their educational loans if it were established that excepting the obligations from discharge would impose an "undue hardship" upon the debtor and the debtor's dependents. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 196 (Bankr.N.D.Ohio 2000).

As used in § 523(a)(8), the term "undue hardship" is not actually defined. As a result, various tests have been developed by the courts to determine whether "undue hardship" exists under any given set of factual circumstances. In this regard, this Court, in accord with those prior decisions rendered by the Sixth Circuit Court of Appeals, has employed what has become known as the *Brunner* Test to determine whether a debtor is entitled to an "undue hardship" discharge of his or her student-loan obligations. *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994); *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir. 1998).

 Under the *Brunner* Test, a debtor must establish that the following elements are in existence in order to establish their entitlement to an "undue hardship" under § 523(a)(8):

(1) The debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and

her dependants if forced to repay the loans.

(2) Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) The debtor has made a good faith effort to repay the loans.

*Brunner v. New York State Higher Educ. Serv. Corp.* 831 F.2d 395 (2nd Cir.1987). With respect to these elements, it is the debtor's burden to establish each by at least a preponderance of the evidence. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 197 (Bankr.N.D.Ohio 2000). As applied here, the Debtor's compliance with the first element does not present an issue: no evidence was given contradicting those income and expense figures put forth by the Debtor which show that, even on a minimal budget, she does not presently earn sufficient income to cover her living expenses. Accordingly, the Court will begin its analysis with the second prong of the *Brunner* Test.

■ The second prong of the *Brunner* test requires a showing that there exist additional circumstances which show that the debtor's financial adversity will persist for a significant portion of the repayment period. *Mitchell v. U.S. Dept. Education (In re Mitchell)*, 210 B.R. 105, 108 (Bankr.N.D.Ohio 1996). The purpose of this requirement is to ensure that the hardship the debtor is experiencing is actually "undue," as opposed to merely a temporary financial setback which, by definition, all debtors experience. *Miller v. U.S. Dep't of Educ. (In re Miller)*, 254 B.R. 200, 204 (Bankr.N.D.Ohio 2000). Carried a step further then, implicit in this requirement is the concept that the debtor's distressed state of financial affairs be the result of events which are clearly out of their control; that is, the debtor must establish that they have done everything in their power to improve their financial situation. *Berry v. Educ. Credit Mgmt. Corp. (In re Berry)*, 266 B.R. 359, 365 (Bankr. N.D.Ohio 2000).

■ In the present case, the Debtor argues that she has complied with this requirement due to her medical conditions which often cause her to miss work, thereby frustrating her ability to reach her full earning potential. And, as the Debtor espouses, a medical condition may, so long as it is sufficiently debilitating, form the basis of an "undue hardship" case. *Chime v. Suntech Student Loan (In re Chime )*, 296 B.R. 439, 445 (Bankr.N.D.Ohio 2003). Notwithstanding, the Court, while not doubting the actual existence of those conditions cited by the Debtor as causing her problems, simply has no evidence before by which to gauge the severity and therefore impact by which these conditions will have on her ability to earn a living. In this regard, this Court has held that when a debtor's health, whether mental or physical, is put at issue, some corroborating evidence must be introduced to substantiate the debtor's position; bare allegations simply will not suffice. *Swinney v. Academic Fin. Serv. (In re Swinney)*, 266 B.R. 800, 805 (Bankr.N.D.Ohio 2001). For example, if properly authenticated, letters from a treating physician could be utilized. *Id.*

But, without any substantive evidence to corroborate the Debtor's testimony regarding her medical conditions, the Court must find that the Debtor has failed to sustain her burden under the second prong of the *Brunner* test. Hence, since each prong of the *Brunner* Test must be met, the Debtor does not qualify for an undue hardship discharge of her student loan debt under 11 U.S.C. § 523(a)(8). Still, even assuming for argumentative sake that she had sustained her burden under the

second prong of the *Brunner* Test, it is also the position of this Court that the Debtor has failed to meet her burden with respect to the third and final prong of the *Brunner* Test.

■ The third prong of the *Brunner* test is an equitable component, and requires that a debtor have made a good faith effort to repay their student loans. This requirement helps to fulfill the concern Congress had when implementing § 523(a)(8): debtors, who soon after graduation, despite having made no attempt to repay their student loans and having received the full benefits of their education, seek nevertheless to discharge their educational obligations. Although not necessarily dispositive of the issue, in a good faith inquiry this Court has placed great importance on two considerations: (1) whether and the extent to which the debtor has made any payments on his or her student loans; and (2) whether the debtor attempted to participate in what is known as the Income Contingent Repayment Program which, in looking to the Federal Poverty Guidelines, bases student-loan payments on income. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 244 (Bankr.N.D.Ohio 2003). Here, neither of the considerations bear favorably for the Debtor. Although either in forbearance or deferment, the Debtor never made any voluntary payments on her student-loan debt; and the Debtor was, by her own admission, informed of the Income Contingent Repayment Program, but did not even attempt to participate. Finally, it is noted that no serious indicia of good faith were offered in rebuttal.

■ In the past, however, this Court has, even after finding that a debtor's student-loan obligations are not dischargeable pursuant to 11 U.S.C. § 523(a)(8), still considered whether the debtor should be entitled to some relief from their educational debts, normally through the granting of a partial discharge. *See Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236 (Bankr.N.D.Ohio 2003); *Hall v. U.S. Dep't. of Educ. (In re Hall)*, 293 B.R. 731 (Bankr.N.D.Ohio 2002). In affording this relief, this Court relied on 11 U.S.C. § 105(a) which provides, in relevant part that: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," so long as such action is consistent with the Bankruptcy Code.

However, the Sixth Circuit Court of Appeals recently reviewed this practice and concluded that, although § 105(a) did allow for the partial discharge of student-loan debt, such a remedy could only be afforded upon an initial finding of "undue hardship." *Miller v. Pennsylvania Higher Educ. Asst. Agency (In re Miller)*, 377 F.3d 616 (6th Cir.2004). Thus, since it has already been found that the Debtor has not established the existence of an "undue hardship," this Court, in light of the *In re Miller* decision, has no authority to invoke § 105(a) so to provide the Debtor with a partial discharge of her student-loan obligations.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

*ORDERED* that the educational-loan obligations held by the Defendant, Educational Credit Management Corporation, against the Plaintiff/Debtor, Holly Matthews, be and are hereby, determined to be NONDISCHARGEABLE DEBTS.